May it please the Court, good morning. My name is Kathy Lewis and I'm from the Ugren-Alexander's Attic Firm in Great Falls, Montana. I'd like to try to reserve about three minutes for rebuttal if I may. In this case, the jury awarded damages for all of the harm caused by GEICO's violation of the Unfair Trade Practices Act. The punitive damages were also awarded solely under the Unfair Trade Practices Act. The second Gore Guidepost compares the punitive damages to the compensatory damages to arrive at a ratio. With regard to Mrs. King's awards for breach of contract and the related awards of attorney's fees and prejudgment interest, a key question faced today is whether it is appropriate to include those amounts with the compensatory damages for purposes of that Gore Guidepost. And the answer is no, it is not appropriate for several reasons. In this case, as in Gore, the comparison is between the punitive award and, quote, the amount of actual harm as determined by the jury. And that's Gore at page 582. Jury Instruction 20, which is document 116 at page 25, told the jury that if it found an unfair trade practices violation, then it, quote, must determine the amount of money which will reasonably and fairly compensate the plaintiff for all loss caused by the defendant. That Instruction 21 informed them that damages means the amount of money that will reasonably and fairly compensate plaintiff for any injury you find was caused by defendant. We, of course, assume they follow that instruction. The Unfair Trade Practices Act allows all damages proximately caused without limit. That's found at Montcodan, section 3318, 242 sub 4. The jury thus awarded $100,000. That's at the verdict at document 120. And in this case, that is the number to use in the Gore ratio. This is not a potential damages case. Contract claims in Montana do not allow for punitive damages. See section 27-1-220 sub 2. This is a unique case. It's an... Yes, it was Judge McKeown. And your position then is that should be excluded? Correct, as well as the amounts for the negligent infliction of emotional stress. We'll get to those separately. I'm just trying to break it apart in fairness to everybody. Sure. So, even though the breach of contract was the same breach that underlies the unfair trade practices, you see those as separate damages? I do. And the reason is because there is no punishment for breach of contract under Montana law. And Supreme Court jurisprudence concentrates on the notice to a defendant of the punishment for his actions. And there is no notice requirements or no notice concerns for a breach of contract claim since there's no punishment for such a violation. It's only the Unfair Trade Practices Act that allows punitive damages. The other issue that's unique about this case is that this is an underinsured motorist case. And so the damages on the breach of contract are measured by the amounts caused by the death of Mr. King. That measurement doesn't sync up with the notice requirements of Gore and Campbell v. Supreme Court where we're looking at the defendant's conduct solely. When you use the word harm in the jury instructions, aren't these so interrelated that the jury sees it all as a harm? They're not making a distinction between breach of contract and tort or the language of the unfair trade practices. They're looking at the harm that was done to her. I think you're right, Judge Rothstein. I think you're right about that. And that's why the harm was fully compensated in this case. And this is unlike a lot of other cases where, for whatever reason, the jury couldn't award nominal damages or even no damages on the claim that underlies the punitive damages award. Here they were fully compensated, or here Mrs. King was fully compensated for the Unfair Trade Practices Act violation. So we have the Unfair Trade Practices, that's $100,000. We have the contract, $100,000 over a year. But then we have the emotional damages, so $100,000 again, correct? Yes, and recall... Why wouldn't that be sufficiently intertwined to be a foundation for punitive damage? Well, if you look at the jury verdict, again, Document 120, it asks, Did plaintiff Louise King suffer serious or severe emotional distress as a consequence of the negligence on the part of an uninsured motorist? And then asked her, What amount of money will compensate plaintiff for the serious or severe emotional distress she suffered as a result of the death of her husband? So again, there's that disconnect between notice to GEICO, a punishment for its conduct, and focusing, as under Gore and other Supreme Court cases, at the conduct of the tortfeasor or statutory violation that led to the punitive damages. So you tie, in your view, the jury verdict ties the loss to the loss of the husband, but not to the payment on the contract? Absolutely. It's explicit in the jury instruction. One other question. Yes. So there's a fourth element, and that's the fees? Yes. And I, you know, I've read some cases from other jurisdictions, and they tend to include those as part of the base for punitives. That's right, Judge McKeon. And would you agree they should be included here? No, I don't agree. Why is this case different? Some states have statutes that cause that. Other states just have cases. What's the situation in Montana? That's exactly right. The cases, if you look carefully at all of the cases, there is a ruling or a statutory provision or something by which you tie the attorney's fees to the tort which gave rise to the punitive damages. Not so here. Under Montana's Unfair Trade Practices Act, the Montana Supreme Court has ruled at least twice that fees and costs are not compensatory damages under the Unfair Trade Practices Act. As Judge Anderson in the district court awarded the fees for pre-summary judgment work only, in fact, he says in his order, which is at document 166, pages 8 through 9, Montana's obligatory insurance exception to the American rule regarding entitlement to attorney's fees is narrow, and under the facts of this case only applies to King's declaratory judgment action on whether she could assert a stand-alone emotional distress claim. The narrow insurance exception does not apply to the trial phase of this case where the issue was not whether King had coverage, but rather was the amount of King's emotional distress claim and whether GEICO violated the Unfair Trade Claims Practices Act. Again, the UTPA being the only claim for which punitives were recovered, and Montana law does not recognize attorney's fees as compensation under that claim. Let me interrupt you for a minute. One tends to think that, I know you're making distinctions here between what was under the Trade Practices Act, what was her emotional damages and what. The fact of the matter is that if GEICO had done what it was supposed to do and paid her the money and just didn't try to get her to assign away things, she wouldn't have had to bring a lawsuit and she wouldn't have had to have attorneys. So why isn't that part of the damages she incurred? Because it is, again, tied to those contract claims or the declaratory judgment claim, and those claims do not allow for punishment. They are not, there's no notice problems that you, the concerns for notice of the punishment that go with the kinds of conduct that allows for punitive damages are not present in those claims. So you keep coming back to the fact that punitive damages are only allowed under the Unfair Trade Practices Act? Absolutely, and the notice concerns of Gore and its progeny. Okay. The same is true for prejudgment interest. I just point you to Judge Anderson's ruling, Order Document 161 at 4, where he talks about how prejudgment interest is only on those contractual damages for Mr. King. I'd like to move on to reprehensibility, if I may. I'm running out of time. In virtually every punitive damages case, you're looking at intentional, reckless, or fraudulent acts. It's not a continuum of admirable contact. However, in this case, with its unique set of facts, Geico's conduct was low on the scale. It's not a case of repeated sexual harassment, racial discrimination, or withholding funds needed for medical care. Nor is this a case of nominal damage. The facts show in the testimony of Janae Estill, the claims adjuster, that there was a 4.5-month delay while she was investigating for liability insurance. She wasn't sure at the time, but it turned out to be an uninsured motorist provision. She had three avenues to look for, and once she made the determination there was no liability insurance, and then she communicated with Mrs. King, there was pushback, and two weeks later, a Montana attorney was engaged. And that attorney, John Boyer of Missoula, shows that his testimony at trial shows that he did reserve a bodily injury claim. There is no evidence that he knew she was seeking emotional distress, stand-alone emotional distress claim, and that he was hoping to engage in discussions with her attorneys. He suspected that there was an attorney, and you can see that in the transcript at pages 415 through 417. You can also see his letters, which really tell pretty much a lot about what happened with him. Well, there never was a bodily injury claim. As it turns out, no, although there are cases where bodily injury is allowed in such a case, but that's another issue that's not in the record. This did not evince or the testimony in the evidence here did not evince an indifference to or reckless disregard of health. She was not physically harmed, and she was not particularly financially vulnerable. Mrs. King was working. She was able to keep her employment. Her husband's business did not fail. She made modest adjustments to her lifestyle until she realized she didn't need to. She didn't seek medical help for her distress. And much of the evidence about her emotional distress, understandably, was focused on her husband's death because she had that stand-alone claim to prove. She complained about being embarrassed about GEICO calling her at work, but there's no evidence that she ever told them not to do so. Again, this is a scale, and when the evidence is confined to GEICO's conduct, it is low on the reprehensibility scale. Contrast that with State Farm. And take a look at this Court's ruling in Zhang v. American Gem Seafoods, where it talks about a difference in kind of reprehensibility between these kinds of cases and the kinds of cases that Zhang was one, where there are discrimination and other kinds of cases. There's scant evidence of recidivism, and the economic harm, of course, under State Farm is duplicated in the Emotional Distress Award, excuse me, for the Unfair Claims Practices Act. Did you want to save some time for rebuttal? I would like to, unless you have a question on any of the other issues, and I would prefer to do that. Thank you so much. Good morning, Your Honors. John Heenan, along with my law partner, Randy Bishop, here on behalf of our client, Louise King. And we appreciate the Court's time here this morning. We've waited a long time to be here. And I really appreciate the time here, because I frankly, in reading the briefs, I don't think I understood the issues the way that I do, standing here this morning. Both parties kind of briefed down the line a Gore analysis, and as this Court's aware, TXO, Gore, Campbell, all are cases that concern the Supreme Court's concern about basically unfettered jury discretion in awarding punitive damages. None of those cases concerned an instance where there was a statutory cap on damages. Here, this jury preceded our Montana law, has a statutory cap on damages. It's 27-1-220. And the U.S. Supreme Court in Cooper Industries tells us that where a state legislature has spoken about giving notice to the defendants of the potential penalty, then the analysis changes dramatically. And if I can quote from the Cooper Industries decision, quote, legislatures enjoy broad discretion in authorizing and limiting permissible punitive damages awards. A good many states have enacted statutes that place limits on the permissible size of punitive damages awards. When juries make particular awards within those limits, the role of the trial judge is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards under Rule 59, whether a new trial or remittitor should be ordered. If no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's determination under an abuse of discretion standard. And Cooper Industries was meaningful to this court's en banc decision, which I think, Your Honor, Judge Gould was part of the panel, in the Asarco case. And in Asarco, the issue concerned punitive damages under Title VII, which has a statutory cap on punitive damages. And there this court says that an exacting gore review, applying the three guideposts rigorously, may be appropriate when reviewing common law punitive damages award. However, when a punitive damages award arises from a statutory regime, the rigid application of the gore guideposts is less necessary or appropriate. Thus, the more relevant first consideration is the statute itself, through which the legislature has spoken explicitly on the proper scope of punitive damages. Well, here we have 27.1.221, where our legislature has codified exactly the type of conduct that subjects a party to punitive damages, and that's committing fraud or malice. And both of those terms are clearly defined in our statute. Our legislature has set a heightened, clear, and convincing standard, burden of proof that the plaintiffs are obligated to prove. And so that satisfies the first prong articulated by the Supreme Court in gore. Does the defendant have notice of the type of conduct that would subject them to punitive damages? And our 27.1.220 satisfies the second prong, notice of the potential penalty. Our legislature, and it's reflected in the excerpts of record, sharing some of the same concerns that the Supreme Court shared in the TXO and Gore and Campbell, they said we're concerned about arbitrary, capricious, lottery-like jury awards, therefore we're going to cap punitive damages at $10 million or 3% of the defendant's net worth, whichever is less. And the argument that we just heard a few minutes ago also focused on notice, the issue being whether there was sufficient notice about the contract-type damages other than the damages that were clearly related to the Unfair Trade Practices Act. Do you want to address that? Sure, I'd be happy to, Your Honor. I think first, basically what the issue now on appeal is, is Montana's statutory damages cap of $10 million, is that constitutional? Does that give GEICO due process notice of the potential penalty that it faced? And so whether the damages are contract or tort, basically they're on notice that conduct that's fraudulent or malicious subjects them to damages up to $10 million. No, it actually excludes contract, though, doesn't it? The statute excludes from punitive damages contract damages. But to the extent... So let's just stop there for a second. If I get your argument, what you're saying is as long as it's under $10 million, then there shouldn't be... What do you benchmark it against? So if it was $9 million, you would stand here and say that would be fine? No. Yes, absolutely. Your answer is as long as it's under $10 million, then anything goes in Montana punitive damages with no constitutional consideration? Well, with limited. I think the ASARCO and Bonk Court is careful to say that the Gore Guideposts still have some relevance, just not the exacting relevance that is required when a common law award is imposed. So to answer your question candidly, Your Honor, yes, if the jury had awarded $9 million, I'd be standing here saying that's absolutely appropriate because GEICO from a constitutional due process analysis was on notice that if they committed malice or if they committed fraud in Montana, they're subject to a penalty up to $10 million. And our legislature met, conferred, determined that $10 million is an appropriate potential penalty. But I think it depends on how you read it. By putting a cap on it doesn't endorse that it's an appropriate penalty in every case. So the fact that you've capped punitive damages simply means that even though you might not use the Gore Guidelines to the same degree, if there was a $1, you'd be saying the same thing. It doesn't matter because they've put a cap on it. Is that your argument? Absolutely, Your Honor. That's a tough one to buy as opposed to, here's the jury award and the $2.5 is some reasonable ballpark that is all right. So I think you're going further than I thought you had gone in your briefs. So I'm just interested to hear this argument this morning. Well, and I think the en banc decision by this court in Asarco, right, where it was a $1 nominal damages and $300,000 in punitive damages and the panel first kind of tackled it from what's the highest ratio that we can talk about and they brought it down to $125,000 and when the en banc panel met, they said, no, it's $300,000 because Congress has spoken. They've told us that an award between $0 and $300,000 in punitives is appropriate and so we have to defer to the legislature unlike a common law award where there's no legislature to defer to and that's when Justice O'Connor's decisions, Justice Kennedy's decisions, of course all of Justice Scalia's dissents where they say when the legislature of a state has spoken, there's a different standard. There's deference that needs to be afforded to the legislature. Counsel, could I interject a question? Yes, please. In the magistrate judge's decision rejecting any modification of punitives, is there any of this reasoning? I may have read the wrong thing, but what I read didn't discuss Gore or Sarko. What did the magistrate judge say? Did he give us any reasoned basis for denying the motion? He didn't, Your Honor. What he said is the court having considered the arguments presented by the parties as well as the record as a whole and the applicable law denies the motion. That's one thing that bothered me about this case is I'm not sure how we can review a decision without any reasons. Well, I think, Your Honor, that the Cooper Industries decision answers that and it tells us that when a jury award is within the, when a jury makes an award within the limits set by statute, the role of the trial judge is to determine whether the jury's verdict is within the confines set by state law, which it was here. The cap was $10 million. The trial court instructed the jury in the instructions with no objection by either party that the cap was $10 million. We argued for $10 million. Geico argued for $100,000, and the jury considered where on the spectrum this award fell, and it awarded $2.5 million. And Geico did not appeal at the time that jury instruction. It has not appealed the constitutionality of our statute, our cap. And so I think, because I was concerned about Your Honor's concern. And I think Cooper Industries saves us, basically, because what it says is where the award is within the statute, the trial court's job is simply to determine under Rule 59 whether a new trial or remittitor should be ordered. And His Honor did consider and denied a motion for new trial or remittitor. And so I think now this court's appellate review is simply to determine whether the trial court's determination under an abusive discretion standard was flawed, and I don't think it was. So our position is that the ratios have limited use, but if then I can address those. Well, don't you also want to talk about the 3 percent part? Because that's an alternate for you, isn't it? The 3 percent part of the statute? Well, it's the lesser of 10 million or 3 percent of a defendant's net worth. And here Geico's net worth exceeded $2 billion, so $10 million was much less than 3 percent for Geico. So basically, by its enormous monetary size, it got more of a benefit under the statute than would, say, a business that had a net worth of $100,000 or $1 million or $10 million, if that makes sense, Your Honor. With respect to the guideposts, because one thing that... So three things, right? The reprehensibility. And in their briefs, and again here this morning, Geico wants to minimize their conduct, but our unanimous jury found that Geico's conduct was fraudulent and or malicious. And that's intentional conduct as defined by our statute. They haven't appealed whether it was fraudulent or malicious. And so efforts to try and minimize and say it wasn't that reprehensible are just frankly not at issue anymore because they haven't appealed it and our jury spoke loud and clear. It wasn't a mistake. Our jury found it wasn't a mistake. It was intentional conduct that Geico perpetrated. With respect to the third prong, civil penalties, I was wrong in my brief because we talked about the $10,000 or $25,000 fine under the insurance code and we talked about revoking a license. But per the ASARCO decision, the third guidepost reflects deference to legislative judgment. So Montana's legislature has determined that up to $10 million is an appropriate punishment for this type of misconduct and that's addressed explicitly in the ASARCO decision. And with respect to the ratios, as I think this court understands by its questioning of Geico's counsel, this is a constitutional issue that we're considering now. It's not a how do we peg these different types of damages. And TXO tells us punitive damages when we do this ratio analysis should bear a reasonable relationship to the harm that has occurred or is likely to occur. And so it's our position that with respect to the tort damages, the unfair trade practices, the jury pegged the damage to Mrs. King at $100,000. But when you look at the damage that was likely to occur, that Geico knew was likely to occur when they leveraged a financially and emotionally vulnerable widow into trying to take half of what she was owed under her insurance policy, they were intending to cheat her out of at least $100,000. And they knew, as Your Honor addressed, that she would have to hire an attorney, bring a lawsuit, do all the things it takes to recover what she was owed. And so by the time you add all those things up, it's not just $100,000. It's the attorney's fees, it's the prejudgment interest, which, by the way, as we sit here today, six years after Mrs. King submitted her claim to Geico, she still hasn't received the other $100,000 that she's admittedly due under her policy. She still hasn't gotten it. So I think you have to add all that type of interest, attorney's fees, and when you do it, we're well within the ratios. But the attorney's fees and the prejudgment interest aren't as much. But if you have the $100,000, what's your ratio? If you have $100,000? You take out the contract damages, you take out the damages that are related to her loss, which don't relate to the unfair competition aspect. You have a huge ratio here, right? Well, it would be 25 to 1, if that's what Your Honor's asking. And do you have any other case that would uphold that within a range? I mean, there's some constitutional limit, even under the $10 million being a cap. Could you cite us to anything else that we might take some solace in with that kind of a range? Well, I think the Asarco case is on all fours on this, right? That was $300,000 to 1. And we've also put in our briefs, I mean, I think there's the Philip Morris v. Williams decision. There was Campbell on remand. There's been lots of decisions that are well in excess of 25 to 1. But I think, candidly, the denominator includes it's at least $200,000, plus attorney's fees and interest and those things. And that brings it to at least $300,000 because we have to calculate interest even up until today. And then we're into an 8 to 1, 9 to 1 type of ratio that certainly comports with due process. Thank you. Thank you, Your Honor. I'd like to first address the cap argument. First and foremost, the punitive damages here did not, as in the Asarco 2 case, arise from a robust statutory regime. The punitive damages here arose from the Unfair Trade Practices Act, which has no cap on compensatory damages. And by the way, I was quoting from Asarco 2. Montana's standalone cap, as you know what that cap is, it applies to a wide range of conduct. And in this case... But it applies to the statute, too, doesn't it? It applies to any situation in which punitive damage. So that's why I say a wide range of conduct, whereas under the Asarco case you're looking at a Title VII cap that applies to Title VII violations. And that prompted the court to say that the damages arose from a robust statutory scheme. Here they didn't arise from the cap. The Title VII cap is so much more, as this court talked about it, strictly and rigidly limiting damages than the Montana cap. And Montana cap does not, as the Title VII cap, leave little to the imagination. It's just not in an analogous situation there. I'd like to quickly talk about the reprehensibility factor and Mr. Heenan's argument that the reprehensibility is reflected in the verdict. But I do want to remind the court that we have a situation here where we had an expert that told the jury what the law was and that the law was violated. And, of course, that further exacerbated the situation of the reasonableness of that award. The Cooperman v. Leatherman case, of course, established that this court provides a de novo review of the amount of punitive damages. And that's why Judge Gould's concern with the fact that Judge Anderson did not publish his findings or any reasoning for his denial of Geico's motion should not worry this court. Because it was fully brief, we have to believe Judge Anderson when he says that he considered the arguments and the record as a whole. And judicial economy has been the driving force behind this court several times when it remits punitive damages to within a constitutional range. And I would posit that judicial economy here would do the same thing. In fact, I would like the court to know that the Tenth Circuit recently is no longer giving plaintiffs a choice of whether to accept the remitted amount. It's simply remitting the amount. You can see that in Jones v. United Parcel, Lompe v. Sunridge, also the California Supreme Court is doing the same thing. So we've got a de novo standard of review, no deference required or reply. So ideally, we ask that you remit punitive damages to no more than a 3 to 1 ratio on de novo review. But in the alternative, we ask that a new trial be granted due to allowing an expert to instruct the jury on the law and how to apply the law to the facts. Thank you. We have your argument in mind. Thank you both, all of you, for your argument this morning. The case of King v. Geico indemnity is submitted.
judges: McKeown, Gould, Rothstein